UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MANI KESHTGARPOUR,

    Plaintiff,

v.

HENRY FORD HEALTH SYSTEM, *et al.*,

    Defendants.

Case No. 17-cv-12917
Hon. Matthew F. Leitman

_____/

## ORDER DENYING PLAINTIFF'S
## MOTION FOR RECONSIDERATION (ECF #29)

By order dated September 11, 2018, this Court dismissed Plaintiff Mani Keshtgarpour, M.D.'s Complaint on the ground that his claims were barred by the applicable statutes of limitations (the "Dismissal Order"). (*See* Dismissal Order, ECF #22.) Keshtgarpour's claims arose out of, and related to, his one-year medical residency with Defendant Henry Ford Health System ("Henry Ford"). In June of 2005 – one month before Keshtgarpour was scheduled to complete the residency program – Henry Ford suspended Keshtgarpour from the program due to his consistent poor performance.[1] (*See* Complaint, ECF #1-3 at Pg. ID 309.) When

---

[1] In the Dismissal Order, this Court said that Henry Ford "terminated" Keshtgarpour from the residency program. (*See* Dismissal Order, ECF #22 at Pg. ID 696.) In a letter to Keshtgarpour, Henry Ford actually said that Keshtgarpour was "suspend[ed]" from the program. (Compl., ECF #1-3 at Pg. ID 309.) But the suspension lasted through the "duration of [his] contract." (*Id.*) As a practical matter,

1

Henry Ford suspended Keshtgarpour, Dr. Peter Coggan, Keshtgarpour's supervisor, informed him in writing that "a graduation certificate [for his residency] will not be issued." (*Id.*)  Twelve years later, Keshtgarpour, proceeding *pro se*, filed his Complaint in this action.  Keshtgarpour seeks "Two Hundred Million U.S. Dollars" in monetary damages and an order compelling Henry Ford to issue what Keshtgarpour calls a "certificate of completion." (*Id.* at Pg. ID 6.)  The Court concluded that all of Keshtgarpour's claims and requests for relief were time-barred[2] for reasons explained by the assigned Magistrate Judge in his Report and Recommendation, and it therefore dismissed Keshtgarpour's Complaint. (*See* Dismissal Order, ECF #22.)

Keshtgarpour has now filed a motion for reconsideration of the Dismissal Order. (*See* ECF #29.[3])  For the reasons explained below, the motion is **DENIED**.

---

there is no difference between a suspension through the end of the residency program and termination from the program.  In any event, the difference, if any, between a termination and a suspension through the end of the program does not impact the analysis of the legal issues before the Court.

[2] As the Magistrate Judge explained, the longest possible limitations period for Keshtgarpour's claims was six years. (*See* Report and Recommendation, ECF #17 at Pg. ID 614-15.)

[3] The motion is titled a "second" motion for reconsideration, but it is actually Keshtgarpour's first substantive request for reconsideration.  His earlier "motion for reconsideration" was a request for permission to seek reconsideration. (*See* ECF #24.) Keshtgarpour apparently did not realize that he did not need to seek permission to file a motion for reconsideration.

## I

Motions for reconsideration in this Court are governed by Local Rule 7.1(h). Under that rule, "[a] motion for rehearing or reconsideration must be filed within 14 days after entry of the judgment or order." E.D. Mich. Local Rule 7.1(h)(1). In addition:

> Generally, and without restricting the Court's discretion, the Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. Local Rule 7.1(h)(3).

## II

Keshtgarpour seeks reconsideration of the Dismissal Order on numerous grounds. The Court has carefully considered Keshtgarpour's arguments and concludes that none of them show that the Dismissal Order contains palpable defects or that the correction of any such defects would result in a different disposition of Henry Ford's motion to dismiss. Accordingly, the Court will not address each argument Keshtgarpour that raises in his motion. However, the Court will address his claim that his Complaint is timely based on Henry Ford's refusal to "reverify" in 2017 that it had agreed to issue him a certificate of completion in 2005.

**III**

Keshtgarpour argues in his motion for reconsideration that the Court erred when it concluded that (1) Henry Ford refused to issue him a certificate of completion in 2005 and (2) his claims are based upon that 2005 refusal. Keshtgarpour says that in 2005, Dr. Coggan made a "preliminary recommendation" that he not receive a certificate of completion. (Mot., ECF #29 at Pg. ID 720-21.) But Keshtgarpour insists that Dr. Coggan later "overruled" that "preliminary recommendation" and determined that Henry Ford would in fact issue him a certificate of completion. (*Id.*) He then insists that his claims are based upon Henry Ford's refusal in 2017 to "REVERIFY" that it Dr. Coggan agreed to issue him that certificate in 2005. (*See id.* at Pg. ID 722.)

The exhibits to Keshtgarpour's Complaint belie his current claim that Henry Ford reconsidered and "overruled" its "preliminary" refusal to issue him a certificate of completion. Henry Ford initially told Keshtgarpour that it would not issue him such a certificate in the letter – quoted above – from Dr. Coggan on June 2, 2005. (*See* Compl., ECF #1-3 at Pg. ID 309.) Then, in a letter dated June 14, 2005, Dr. John Popovich, Chair of the Department of Medicine, confirmed that he had "reviewed [Keshtgarpour's] grievance against dismissal" from the residency program as recommended by Dr. Coggan and that he "support[ed] the decision of [Dr. Coggan] to dismiss" Keshtgarpour from the program. (*Id.* at Pg. ID 310.) Dr.

4

Popovich stressed that Keshtgarpour would not be "allow[ed] to complete" the program. (*Id*.) Nothing in either of these letters indicates that there was anything "preliminary" about Henry Ford's decision to dismiss Keshtgarpour from the residency program and not issue him a certificate of completion. Moreover, between 2010 and 2012, Keshtgarpour communicated with Henry Ford's in-house legal counsel, and she again confirmed that he was "not entitled to a certificate of completion." (*Id.* at Pg. ID 308; *see also id.* at Pg. ID 306-07.) Simply put, from at least June of 2005 through 2012, Henry Ford consistently told Keshtgarpour that he was *not* entitled to, and would *not* receive, a certificate indicating that he successfully completed his residency program.

Keshtgarpour counters that other letters and emails demonstrate that in 2005, Henry Ford "overruled" its decision to withhold a certificate of completion and actually decided that it would issue him the certificate. (*See* Mot., ECF #29 at Pg. ID 724.) He misreads these communications.

Keshtgarpour first relies upon a recommendation letter written by Dr. Coggan (the same doctor who suspended Keshtgarpour and told him that he would not be receiving a certificate of completion) on July 1, 2005. (*See* Compl., ECF #1-2 at Pg. ID 249.) This letter does *not* say that Keshtgarpour successfully completed his residency program. (*See id*.) Instead, the letter begins with information about Keshtgarpour's background and then notes that he worked hard "to improve his

5

performance." (*Id.*) The letter says that Keshtgarpour received "strong ratings for professionalism," but it does not say that he actually performed well in any other area. (*Id.*) Nor does the letter mention any specific achievements. (*See id.*) The letter simply does not indicate in any way that Keshtgarpour earned, was entitled to, or would be receiving a certificate of completion.

Keshtgarpour next relies upon a letter written by Dr. Coggan on September 22, 2005. (*See* Compl., ECF #1-2 at Pg. ID 250.) This letter merely lists the internship rotations that Keshtgarpour completed at Henry Ford. (*See id.*) It does not say anything about his performance in the various rotations, nor does it say that he completed all of the requirements of the residency program. Most importantly, it does not say that he earned, was entitled to, or would be receiving a certificate of completion.

Keshtgarpour argues that this letter is tantamount to a statement by Henry Ford that it had "overruled" its decision to withhold a certificate of completion. (Mot., ECF #29 at Pg. ID 724-26.) He says that the letter must have that meaning because a physician is necessarily entitled to a certificate of completion when he completes the rotations listed in the letter. (*See id.*) But Keshtgarpour has not cited evidence in the record that supports or verifies his contention that Henry Ford residents were automatically entitled to a certificate of completion upon completing the rotations listed in the letter. Stated another way, he has not presented any

6

evidence that, at Henry Ford, the sole requirement for a certificate of completion was the completion of the listed rotations. More importantly, he has not presented any evidence that Henry Ford issued certificates of completion to residents, like him, who completed the listed rotations *but did not do so satisfactorily*. Simply put, the letter listing the rotations that Keshtgarpour completed provides no indication that Henry Ford had "overruled" its earlier decision to withhold a certificate of completion based upon his poor performance.[4]

Finally, Keshtgarpour argues that a 2017 email from the Henry Ford Physician & Alumni Relations Department confirms that Henry Ford did grant him a certificate of completion in 2005. (*See* Mot., ECF #29 at Pg. ID 720.) In the email, a Henry Ford employee (who is not a physician and who had no apparent connection to Keshtgarpour's residency twelve years earlier) writes that "[a]ll physicians who completed their training at Henry Ford are automatically enrolled as members of the Alumni Association" and that Keshtgarpour is "coded as an alum" in an Alumni

---

[4] Even if the September 22, 2005, letter could be construed as a statement by Henry Ford that it would issue Keshtgarpour a certificate of completion, Keshtgarpour's claims related to the certificate would still be time-barred. Keshtgarpour insists that his claim is based upon Henry Ford's refusal to "reverify" in 2017 that it had agreed to issue him a certificate of completion in 2005. (Mot., ECF #29 at Pg. ID 722.) But the exhibits to Keshtgarpour's Complaint demonstrate that Henry Ford refused to "reverify" his receipt of the certificate in 2010 and 2011 – more than six years before he filed this action – and repeatedly maintained that refusal up until the time he filed this action. (*See* Compl., ECF #1-3 at Pg. ID 306-08.) Thus, any claim based upon Henry Ford's alleged refusal to reverify accrued more than six years before Keshtgarpour filed this action and is time-barred.

Association database. (*See* Compl., ECF #1-2 at Pg. ID 251.) But an Alumni Association internal database code is hardly evidence that the physicians supervising Keshtgarpour's residency reversed their clearly- and consistently-expressed decision to withhold a certificate of completion – a decision repeatedly confirmed to Keshtgarpour by a Henry Ford in-house attorney who specifically inquired into whether Keshtgarpour had been awarded a certificate of completion.

In sum, the documentary record attached to Keshtgarpour's Complaint is crystal clear: since June 2005 Henry Ford has consistently and repeatedly told him that he was not entitled to, and would not be receiving, a certificate of completion. Accordingly, his claims in this action challenging Henry Ford's refusal to issue and/or reverify his receipt of such a certificate are time-barred.

## IV

For all of the reasons stated above, **IT IS HEREBY ORDERED** that Keshtgarpour's motion for reconsideration of the Dismissal Order (ECF #29) is **DENIED**.

Dated: November 30, 2018

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

8

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 30, 2018, by electronic means and/or ordinary mail.

                                                  s/Holly A. Monda
                                                  Case Manager
                                                  (810) 341-9764